MARTIN CROWLEY, APPELLANT, v. LAURA DUFFRIN, WASHOE COUNTY DEPUTY COURT CLERK, RESPONDENT.

No. 23489

June 22, 1993                              855 P.2d 536

*Martin Crowley,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Dorothy Nash Holmes,* District Attorney, and *William A. Baker* and *Margaret M. Crowley,* Deputy District Attorneys, Washoe County, for Respondent.

---

[5]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this matter.

## OPINION

By the Court, STEFFEN, J.:

Appellant Martin Crowley is an attorney who has represented indigent criminal defendants in the Second Judicial District Court in Washoe County. Crowley ceased receiving indigent appointments after invoking his right to compensation under NRS 7.125 rather than a contract he entered into with the Second Judicial District Court which provided for a lesser rate of pay. Crowley filed a complaint for declaratory relief against respondent Laura Duffrin, then Washoe County Deputy Court Clerk, and Washoe County Court Administrator Dennis Metrick.[1]

---

[1]According to the record, Metrick was never served and never filed an answer to the complaint. Although Metrick did, at least nominally, join with

Crowley sought a declaration of contractual invalidity because his contract with the county compensated court-appointed attorneys at a rate less than that specified in NRS 7.125. The district court granted summary judgment to Duffrin and Metrick, ruling that they were not proper parties to the action. The court also ruled that the Second Judicial District Court's inherent power over attorneys empowered it to adopt alternatives to NRS 7.125 in compensating court-appointed attorneys. We conclude that summary judgment was improper and reverse.

## FACTS

In 1988, Crowley was a newly-admitted Nevada attorney who desired to receive appointments to represent indigent criminal defendants. Respondent Duffrin advised Crowley that he would have to sign a contract as a prerequisite to receiving such appointments. On July 15, 1988, Crowley obligingly executed a writing entitled "Professional Services Contract Alternate Attorney." The parties to the contract were Crowley and the Second Judicial District Court of Washoe County (referred to in the contract as the "County").[2]

Under Part A of the contract, Crowley was obligated to render professional services for indigents charged with criminal offenses (except murder). As full compensation for handling a case from inception through trial (including sentencing), the County would pay Crowley $333 (currently $400). Part B of the contract provided for the representation of indigents at probation revocation proceedings at hourly rates specified in Nevada Revised Statutes Chapter 7.

Under the terms of the contract, Crowley would submit his claims at the end of each month to the Administrative Deputy Court Clerk (then Laura Duffrin) for approval. Thereafter, the claims would be submitted to the County for payment. The term of the contract was six months, renewable for a successive six months upon identical terms. The contract was subject to termination by the Chief Judge of the Second Judicial District Court with or without cause upon five days' written notice to Crowley.

Before the expiration of the contract, Crowley became aware of NRS 7.125, which sets the fees to which court-appointed attorneys are entitled. Crowley directed Duffrin's attention to the statute and informed her that his future appointments would have

---

Duffrin in a successful motion for summary judgment, we have deleted Metrick's name from the caption of this appeal since he is a non-party to the action. *See* Rae v. All American Life & Cas. Co., 95 Nev. 920, 922, 605 P.2d 196, 197 (1979) (an individual named as a co-defendant is not a party unless he has been served).

[2]Former District Judges Robert Schouweiler and Roy Torvinen signed the contract on behalf of the Second Judicial District Court.

to be governed by NRS 7.125.[3] Crowley remained on the district and justice's courts' alternate lists and he continued to receive appointments until some time in 1989. During this period, Crowley submitted his claims to District Judge James Guinan and later to District Judge Robin Wright because Duffrin refused to process Crowley's claims. The district judges approved the payment of Crowley's vouchers.

---

[3]The version of NRS 7.125 in effect when this controversy arose provided:

1. Except as limited by subsections 2, 3 and 4, an attorney other than a public defender appointed by a magistrate or a district court to represent or defend a defendant at any stage of the criminal proceedings from the defendant's initial appearance before the magistrate or the district court through the appeal, if any, is entitled to receive a fee in accordance with the following schedule:

(a) For consultation, research and other time reasonably spent on the matter to which the appointment is made, except court appearances, $40 per hour.

(b) For court appearances, $60 per hour.

2. The total fee for each attorney in any matter regardless of the number of offenses charged or ancillary matters pursued must not exceed:

(a) If the most serious crime is a felony punishable by death or by imprisonment for life with or without possibility of parole, $6,000;

(b) If the most serious crime is a felony other than a felony included in paragraph (a) or is a gross misdemeanor, $2,500;

(c) If the most serious crime is a misdemeanor, $750;

(d) For an appeal of one or more misdemeanor convictions, $750; or

(e) For an appeal of one or more gross misdemeanor or felony convictions, $2,500.

3. An attorney appointed by a district court to represent an indigent petitioner for a writ of habeas corpus or other post-conviction relief, if the petitioner is imprisoned pursuant to a judgment of conviction of a gross misdemeanor or felony, is entitled to be paid a fee not to exceed $750.

4. If the appointing court because of:

(a) The complexity of a case or the number of its factual or legal issues;

(b) The severity of the offense;

(c) The time necessary to provide an adequate defense; or

(d) Other special circumstances,

deems it appropriate to grant a fee in excess of the applicable maximum, the payment must be made, but only if the court in which the representation was rendered certifies that the amount of the excess payment is both reasonable and necessary and the payment is approved by the presiding judge of the judicial district in which the attorney was appointed, or if there is no such presiding judge or if he presided over the court in which the representation was rendered, then by the district judge who holds seniority in years of service in office.

5. The magistrate, the district court or the supreme court may, in the interests of justice, substitute one appointed attorney for another at any stage of the proceedings, but the total amount of fees granted all appointed attorneys must not exceed those allowable if but one attorney represented or defended the defendant at all stages of the criminal proceeding.

*See* 1987 Nev. Stats. ch. 554 § 1.

Duffrin became aware that Crowley remained on the alternate lists of the district court and justice's court although he was not under contract with the County. By letter of May 3, 1989, Duffrin advised Crowley of his status and informed him that he would not receive further appointments until she heard from him. Crowley replied that he was entitled to continue to receive criminal appointments without signing a contract with the County. As a result of these communications, Duffrin instructed court personnel to refrain from appointing Crowley to any criminal defense cases. Thereafter, Crowley received no further appointments.

Convinced of the rightness of his position, Crowley filed suit against Duffrin and her immediate supervisor, Washoe County Court Administrator Dennis Metrick, under whose direction Duffrin allegedly acted. In his verified complaint for declaratory relief, Crowley sought a declaration that the County contracts were in violation of a preemptive state statute and were therefore invalid. Crowley also asserted claims for constitutional and civil rights violations, for which he sought compensatory and punitive damages. Duffrin filed an unverified answer on October 4, 1991.[4]

In May, 1992, Duffrin and Metrick moved for summary judgment on the primary grounds that attorney Crowley was obligated to render legal services to criminal indigents without regard to compenstion and that NRS 7.125 did not alter that obligation. The district court determined that summary judgment was warranted.

The lower court concluded that Crowley failed to state a claim against Duffrin and Metrick because they were not parties to the contract and did not adopt the subject procedure. The court ruled that Crowley was required to sue the Second Judicial District Court if he sought to have its procedure declared constitutionally or statutorily infirm. The court also held that attorneys were not constitutionally entitled to full compensation. In rejecting Crowley's preemption argument, the district court ruled:

> [A] court is not an inferior or subordinate governmental body. The Second Judicial District Court, as a separate branch of the government, has inherent power over the attorneys who are officers of the Court, to adopt alternative procedures to pay their fees under court appointments. There is nothing illegal or unconstitutional about such a procedure.

This appeal ensued.

## DISCUSSION

A threshold issue on appeal concerns the propriety of summary

---

[4] See footnote 1.

judgment based upon a misjoinder of parties. Crowley claims that NRS 30.040[5] entitles him to have the validity of the contract declared without regard to whether the district court is a party to the action. Crowley insists that the district court need not be made a party because the district court has continued to appoint him notwithstanding his refusal to sign the contract. He contends that Duffrin and Metrick are the proper parties to the action since they were responsible for removing his name from the appointment list.

The parties to a declaratory relief action are specified by NRS 30.130 as follows:

> When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding that involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance or franchise is alleged to be unconstitutional, the attorney general shall also be served with a copy of the proceeding and be entitled to be heard.

*See also* University of Nevada v. Tarkanian, 95 Nev. 389, 594 P.2d 1159 (1979). In *Tarkanian,* we concluded that the failure to join a necessary party did not serve the interest of justice or comply with NRCP 19(a). We also noted that remanding the case for joinder of the necessary party would "serve the interest of judicial efficiency by precluding subsequent litigation of the very issues now presented." 95 Nev. at 399, 594 P.2d at 1165.

Here, the Second Judicial District Court was a party to the contract and presumably supplied or approved the terms of compensation to be paid to court-appointed attorneys. Because a declaratory judgment concerning the validity of the contract could prejudice or otherwise affect the rights of the Second Judicial District Court and the coffers of Washoe County, the district court and the county should have been made parties to these proceedings.

---

[5]NRS 30.040 provides that:

Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder.

Despite the foregoing conclusion, the misjoinder or nonjoinder of parties does not justify the entry of summary judgment against Crowley. The district court should have denied the motion for summary judgment and allowed Crowley to amend his complaint to join or delete a party or parties, or the district court should have effectuated the amendment *sua sponte. See* NRCP 21.[6] We now turn to the merits of Crowley's request for declaratory relief.

The gravamen of Crowley's claim is that NRS 7.125 governs the compensation of court-appointed attorneys and that the Second Judicial District Court and Washoe County are without jurisdiction to implement a payment schedule at variance with the statute. Crowley contends that since the Legislature has enacted legislation on the subject of fees for court-appointed attorneys, any conflicting ordinance or court-adopted policy is preempted and thus invalid.

Contrarily, respondent argues that an attorney is ethically obligated to provide legal services to criminal indigents without regard to compensation if ordered to do so by a court. In effect, respondent contends that the power to appoint without compensation includes the power to appoint with lesser compensation. Respondent thus maintains that it is within the exclusive province of the judiciary to fix the amount of fees to which an attorney is entitled without regard to the statute.

In interpreting a statute whose language is unambiguous, a court should not "add to or alter [the language] to accomplish a purpose not on the face of the statute or apparent from permissible extrinsic aids such as legislative history or committee reports." Cirac v. Lander County, 95 Nev. 723, 729, 602 P.2d 1012, 1016 (1979). "We are not empowered to go beyond the face of a statute to lend it a construction contrary to its clear meaning." Union Plaza Hotel v. Jackson, 101 Nev. 733, 736, 709 P.2d 1020, 1022 (1985).

Contrary to the district court's ruling and respondent's assertions, an attorney is not obligated to provide representation without regard to compensation. It is only "[i]n the absence of a statute providing for compensation [that] a lawyer, upon court order, is obliged to represent an indigent without recompense." Brown v. Board of County Comm'rs, 85 Nev. 149, 150, 451 P.2d 708, 709 (1969).

---

[6]NRCP 21 provides in relevant part: "Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

The Nevada Legislature has provided a statutory basis for compensating court-appointed attorneys. The statute was originally enacted as "[a]n Act to provide for the payment of attorneys in certain cases." *See* 1875 Nev. Stats. ch. 86 § 1. A review of the legislative history of the statute reveals that the purpose behind the enactment of NRS 7.125 was to relieve the few qualified criminal defense attorneys from the financial burden of indigent appointments. The Legislature sought to provide reasonable, although by no means full, compensation to attorneys who honor their professional obligations to provide representation to indigent criminal defendants. In order to facilitate that purpose and respect the exigencies involved in maintaining the practice of law, the Legislature has periodically amended NRS 7.125 to increase the amount of fees to which court-appointed counsel are entitled.

The language of NRS 7.125, as it existed when this controversy arose, plainly and unambiguously provided that an attorney "is *entitled* to receive a fee in accordance with the following schedule." (Emphasis added.) Under the statute at that time, an attorney was entitled to $40 per hour for out-of-court matters and $60 per hour for court appearances, up to a specified maximum amount. The statute permitted the appointing court to grant fees in excess of those specified in the statute if such fees were deemed appropriate.[7] To allow counties to pay individual court-appointed attorneys less than the statutory amount would override and frustrate the purpose of the statute.

Respondent acknowledges that NRS 7.125 was enacted to relieve the financial burden imposed upon court-appointed criminal defense attorneys. However, respondent contends, and the district court agreed, that NRS 7.125 does not prohibit the judiciary from adopting "alternative procedures" for the payment of court-appointed counsel.

We are not persuaded that a court's inherent power over attorneys entitles it to disregard, and in effect overrule and nullify, the statute by adopting payment schedules of lesser cost to the counties. On the contrary, we have generally acknowledged that courts are not to award fees unless authorized by statute.[8]

---

[7]NRS 7.125 was recently amended to increase the hourly rate to which court-appointed attorneys are entitled for out-of-court matters from $40 to $60, as well as to raise the maximum fees in felony cases where the punishment is death or life imprisonment.

[8]The Legislature does not interfere with the constitutional mandate of the

In *Brown,* the implicated predecessor statute to NRS 7.125 allowed a maximum of $300 as compensation to court-appointed attorneys; it made no provision for excess fees. Brown, after representing a criminal defendant as appointed counsel, sought compensation in excess of $11,000. When the Washoe County Board of County Commissioners rejected Brown's claim, the attorney petitioned this court for mandamus ordering the Board to pay him the excess fees. The question addressed by the court was whether the judiciary's inherent power over the practice of law carried with it the authority to direct compensation for professional services beyond the statutory limits. 85 Nev. at 151, 451 P.2d at 709. In *Brown* we held that in the absence of extraordinary circumstances, People v. Randolph, 219 N.E.2d 337 (Ill. 1966), the courts were not empowered to order the Board to pay fees in excess of those authorized by statute. *Id.* at 153, 451 P.2d at 711.

Our ruling in *Brown* applies here. If, absent truly extraordinary circumstances, counties were at liberty to disregard the statutory rate of pay for court-appointed attorneys, the statute would be effectively circumvented as a cost-saving measure. The Legislature's plenary authority "operates to restrict and limit the exercise of all municipal powers, whether public or governmental, proprietary or private." Lamb v. Mirin, 90 Nev. 329, 333, 526 P.2d 80, 82 (1974). Where, as here, the Legislature has adopted a comprehensive scheme for the regulation of a particular subject, any conflicting local regulation on the subject is preempted. *Id.*

Although the judiciary is not a subordinate governmental body, the courts are not entitled to disregard a statute pertaining to attorneys where, as here, the statute does not interfere with the inherent powers of the courts. *See* Marfisi v. District Court, 85 Nev. 445, 456 P.2d 445 (1969). Indeed, the exercise of the legislative power in enacting NRS 7.125 actually advanced the purposes of the criminal justice system in this state. As we recognized in *Brown,* it is within the Legislature's province to determine the compensation to which a court-appointed attorney shall be entitled.

We hold that NRS 7.125 governs the compensation of individual court-appointed attorneys in Nevada. The contract procedure at issue here as promulgated by the Second Judicial District Court

judiciary in adopting measures to assist indigent criminal defendants in their right to have effective representation. Of course, if the Legislature had enacted legislation purporting to prohibit the payment of fees to court-appointed counsel, a different analysis would apply concerning the inherent powers of the courts.

and Washoe County is therefore unauthorized and an invalid encroachment on a lawfully enacted state statute.[9]

For the reasons discussed above, we conclude that summary judgment was inappropriately granted in this case. We therefore reverse and remand to the district court for joinder of the necessary parties and the issuance of declaratory relief to Crowley consistent with this opinion.[10]

Rose, C. J., and Young, J., concur.

Springer, J., with whom Shearing, J., agrees, dissenting:

I respectfully submit that the Majority has not gotten over what it calls the "threshold issue" of Crowley's failure to sue the proper defendant. As the Majority recognizes, "the district court and the county should have been made parties to these proceedings." This ends the case as far as I am concerned.

I agree that the legislature "has provided a statutory basis for compensating court-appointed attorneys"; but this does not mean that an attorney cannot agree to accept a different scale of compensation, as was done here.

NRS 7.125 provides that an appointed attorney "is entitled to receive a fee . . ., $60 per hour." Certainly, this statute *authorized* the payment of attorneys at that rate, which was undoubtedly the purpose of the statute. There is, however, absolutely nothing in the statute which precludes the attorney and the court or county from contracting for services under different terms. Just because the statute gives attorneys the *right* to be compensated at a prescribed hourly rate, that in no way prohibits them from *agreeing* to compensation at a lower rate or under different terms.

The Majority characterizes NRS 7.125 as "a comprehensive scheme for the regulation of a particular subject" which preempts "any conflicting local regulation." I believe that this is a mischaracterization of both the statute and the local action taken by the district court. The statute merely authorizes payment to attorneys at a specified maximum rate and sets the maximum amounts per action. Setting maximum rates of compensation does not provide a "comprehensive scheme." The local action is not a

---

[9]Our holding is limited to the appointment of attorneys on a case-by-case basis. Today's ruling does not reach what are commonly known as retainer agreements, in which private attorneys are retained on a contract basis for a specified periodic fee. We express no opinion as to the propriety of such agreements.

[10]This matter is remanded to the Honorable Joseph O. McDaniel, Senior Judge, if he is available. If not, since the Second Judicial District Court must be joined as a party defendant, the matter must be assigned to a judge outside the Second Judicial District Court.

"regulation" but rather a contract freely entered into by the parties for a lower rate of compensation under terms that are mutually beneficial to the parties. This is no encroachment on any state statute either as to its letter or its spirit.

During the period that Crowley was under contract, his compensation was governed by the contract. Thereafter, in the absence of contract, he is entitled to be paid at the statutory rate. There is nothing, however, in law or equity which requires the courts to appoint any particular attorney so his claims of civil rights violations are without merit.

I think that the district court was correct in the way it ruled in this case; so, I would affirm the summary judgment.