SOUTHERN NEVADA HOMEBUILDERS ASSOCIATION, Appellant, *v.* CLARK COUNTY, a Political Subdivision of the State of Nevada; CITIZENS FOR SMART GROWTH; CONCERNED CITIZENS OF LOGANDALE; NORTHWEST CITIZENS ASSOCIATION; CHARLES CARTER; MARY DUEHLMEIER; CAROLYN EDWARDS; GEORGE HITTER; and LISA MAYO-DE RISO, Respondents.

No. 42418

August 11, 2005            117 P.3d 171

*Kummer Kaempfer Bonner & Renshaw* and *Christopher L. Kaempfer* and *James E. Smyth II,* Las Vegas; *Lubbers Law Group* and *Edward C. Lubbers,* Las Vegas, for Appellant.

*David J. Roger,* District Attorney, and *Robert T. Warhola,* Deputy District Attorney, Clark County, for Respondent Clark County.

*Law Office of Garry L. Hayes* and *Garry L. Hayes* and *Martin L. Welsh,* Henderson, for Respondents Citizens for Smart Growth, Concerned Citizens of Logandale, Northwest Citizens Association, Carter, Duehlmeier, Edwards, Hitter, and Mayo-De Riso.

Before ROSE, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, HARDESTY, J.:

The Clark County Board of Commissioners approved a debated zoning ordinance that required supermajority (two-thirds) board approval of nonconforming zone change applications. The ordinance's enabling statute, NRS 278.260, is silent as to whether supermajority approval is authorized. The district court concluded that the construction of other relevant statutes, together with silence on the matter in NRS 278.260, amounted to a broad grant of authority to the County Commissioners and declared the supermajority voting provision valid.

We conclude that there is no support for the district court's construction. Silence on voting requirements in a statute indicates the Legislature's desire that only a simple majority approval be met. And there are no other statutes upon which the supermajority approval requirement can be properly grounded. Further, the County Commissioners have not demonstrated any contrary legislative intent, and public policy considerations do not support their position. Therefore, declaratory relief validating the supermajority voting requirement was improper.

### FACTS AND PROCEDURAL HISTORY

In February 2003, the County Commissioners approved Clark County Ordinance 2865. The ordinance requires a comprehensive update of the Clark County master plan at least once every five years and sets forth new procedures to amend zone change applications that do not conform to the master plan. These new procedures also prohibit the County Commissioners from considering nonconforming zone change applications within two years of a master plan update. Once this two-year period expires, the County Commissioners may consider nonconforming zone change applications once each quarter, but approval of such requests may only occur if the applicant meets certain compelling justification requirements not at issue here and satisfies the ordinance's new supermajority approval requirement.

During the public hearings held as part of the approval process for this ordinance, representatives for Southern Nevada Homebuilders Association (SNHA) voiced their opposition. SNHA's opposition was unsuccessful, and the County Commissioners approved the ordinance.

Once the ordinance was adopted, Clark County, joined by various citizens and citizens groups, filed an action in district court

seeking a declaration that the ordinance is valid and not in conflict with NRS 278.260. SNHA filed a counterclaim, asserting that the supermajority voting requirement in the ordinance is invalid because it is inconsistent with NRS 278.260.

The district court granted summary judgment in favor of Clark County and the citizens groups, holding that county commissions were given broad grants of power by the Legislature. In particular, the district court held that the grants of power found in NRS 278.260 and NRS 278.230(2) provide mechanisms by which the County Commissioners could require supermajority approval of nonconforming zone change applications. In so holding, the district court also determined that our decision in *Falcke v. Douglas County*,[1] which invalidated a different supermajority voting requirement based on a conflict with its enabling statute, was not controlling in this instance. This appeal followed.

## DISCUSSION

### Standard of review

The issue in this case is one of statutory construction, which is a question of law, and is reviewed de novo, without deference to the district court's conclusions.[2] When interpreting a statute, this court must give its terms their plain meaning, considering its provisions as a whole so as to read them ''in a way that would not render words or phrases superfluous or make a provision nugatory.''[3] Further, it is the duty of this court, when possible, to interpret provisions within a common statutory scheme ''harmoniously with one another in accordance with the general purpose of those statutes'' and to avoid unreasonable or absurd results, thereby giving effect to the Legislature's intent.[4]

### NRS 278.260 does not authorize the adoption of a supermajority voting requirement to approve nonconforming zone change applications

NRS 278.260 is an enabling statute, providing the County Commissioners with the power to effect zoning decisions and, in particular, to decide nonconforming zone change applications.

---

[1] 116 Nev. 583, 3 P.3d 661 (2000).

[2] *Walker v. Dist. Ct.*, 120 Nev. 815, 819, 101 P.3d 787, 790 (2004); *Salas v. Allstate Rent-A-Car, Inc.*, 116 Nev. 1165, 1168, 14 P.3d 511, 513 (2000).

[3] *Charlie Brown Constr. Co. v. Boulder City*, 106 Nev. 497, 502, 797 P.2d 946, 949 (1990), *overruled on other grounds by Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259 (2000).

[4] *Washington v. State*, 117 Nev. 735, 739, P.3d 1134, 1136 (2001).

NRS 278.260(1) gives the County Commissioners authority to "provide for the manner in which zoning regulations and restrictions . . . are determined, established, enforced and amended."[5] This grant of power is more broadly enumerated in NRS 278.020, which provides that the County Commissioners are "authorized and empowered to regulate and restrict the improvement of land and to control the location and soundness of structures" in order to promote the "health, safety, morals, or the general welfare of the community." The statutes, however, are silent on whether voting requirements to approve nonconforming zone change applications require simple or supermajority approval.

The Nevada Legislature has specifically legislated voting requirements for other land planning applications within NRS Chapter 278.[6] No zoning application statute in Nevada, however, requires supermajority approval in any instance. In *Falcke,* this court compared a different NRS Chapter 278 enabling statute, NRS 278.220, with a related statute, NRS 278.210. NRS 278.220 provides for the County Commissioners' approval of master plan amendments, but, like the statute at issue here, does not expressly provide for a supermajority voting requirement regarding such amendments. NRS 278.210(2), on the other hand, expressly requires that, at the earlier stage, when a planning commission approves plan amendments, it "must be by resolution of the commission carried by the affirmative votes of not less than two-thirds of the total membership of the commission." Thus, in *Falcke,* we held that given the express language requiring a supermajority vote for approval in NRS 278.210(2) and the absence of similar language in NRS 278.220, the Legislature's omission in the former statute reflects its intent to require approval only by a simple majority.[7]

We further stated in *Falcke* that NRS Chapter 278 provides a "comprehensive statutory framework"[8] and that our decision was necessary to provide guidance to the counties of this state in "following the dictates of NRS Chapter 278."[9] When a statutory scheme is in place, deference should be given to that scheme.[10] A common statutory scheme exists in this instance, within which NRS 278.260 and NRS 278.220 are both found. As a result, the

---

[5]NRS 278.015 defines "[g]overning body" as "the city council or other legislative body of the city or the board of county commissioners."

[6]*Falcke,* 116 Nev. at 589, 3 P.3d at 664; *see* NRS 278.210.

[7]116 Nev. at 589, 3 P.3d at 664.

[8]*Id.*

[9]*Id.* at 587, 3 P.3d at 663.

[10]*See Flick Theater v. City of Las Vegas,* 104 Nev. 87, 89-90, 752 P.2d 235, 237 (1988).

*Falcke* court's reasoning is instructive in this instance. When a statute does not express specific or heightened voting requirements, this court will not take it upon itself to fill in such requirements, for " 'it is not the business of this court to fill in alleged legislative omissions based on conjecture as to what the legislature would or should have done.' "[11] Therefore, we conclude that, by its failure to state otherwise, the Legislature intended only simple majority approval of nonconforming zone change applications under NRS 278.260.

Clark County and the citizens groups argue that NRS 278.250(4) and NRS 278.260(1) authorize the County Commissioners to impose supermajority approval requirements because they broadly grant the governing body power over zoning issues;[12] however, neither provision expressly authorizes a supermajority voting requirement. Further, accepting this argument would necessarily lead to the conclusion that a county could require a vote of 80% or 90% majority. Nothing in the legislative history of NRS Chapter 278 suggests that the Legislature intended to delegate that kind of power to the counties' governing bodies. Although the Nevada Legislature has expressly required heightened approval requirements in a number of other contexts,[13] it has not provided for imposing a supermajority voting requirement for nonconforming zone change applications, and we will not infer one here.

We conclude, therefore, that the ordinance's supermajority approval requirement violates its enabling statute, NRS 278.260.

*No other statutory provision provides a basis for a supermajority voting requirement*

SNHA further contends that the district court erred when it concluded that NRS 278.230(2) or NRS 281.501(5) provide a statutory basis for upholding the ordinance. We agree.

The district court cited NRS 278.230(2) in support of its conclusion that the Legislature expressly authorized the County Commis-

---

[11]*Falcke*, 116 Nev. at 589, 3 P.3d at 665 (quoting *McKay v. Board of Cty. Comm'r*, 103 Nev. 490, 492, 746 P.2d 124, 125 (1987)).

[12]NRS 278.250(4) states that "[i]n exercising the powers granted in this section, the governing body may use any controls relating to land use or principles of zoning that the governing body determines to be appropriate." NRS 278.260(1) states that "[t]he governing body shall provide for the manner in which zoning regulations and restrictions . . . are determined."

[13]*See, e.g.*, NRS 278.210(2) (two-thirds vote by the planning commission to adopt or amend a master plan); NRS 377B.100(2) (two-thirds vote by the board required to approve tax for infrastructure); NRS 540A.040 (two-thirds vote by the board required to take action concerning the board's administrative matters); NRS 705.020(1) (two-thirds vote by the board required to grant use of a street to a railroad).

sioners to adopt a supermajority voting rule. However, reliance on this subsection for authority to establish voting requirements is improper. NRS 278.230(2) provides, "[T]he governing body may adopt and use such procedures as may be necessary for this purpose." But this subsection must be read in the context of NRS 278.230(1) and the statutory scheme in which it appears. NRS 278.230(1) concerns the implementation of a master plan by the governing body once a master plan has been adopted. It does not, therefore, govern the approval of nonconforming zone change applications, or even approval procedures in general. Thus, NRS 278.230(2) cannot be read to expand the authority of the County Commissioners to impose a greater voting requirement than that mandated by the Legislature's silence in NRS 278.260.

NRS 281.501(5) states that "the necessary quorum to act upon and the number of votes necessary to act upon [a] matter, as fixed by any statute, ordinance or rule, is reduced as though the member abstaining were not a member of the body or committee." NRS 281.501(5) is a narrow statute defining a quorum when a public body member must abstain from a vote due to a conflict of interest. It does not operate as an enabling statute empowering the County Commissioners to adopt a supermajority voting requirement in zoning matters.

Further, we disagree with the district court's conclusion that, by addressing concerns regarding the quorum provision's effect on nonconforming zone change application supermajority approval requirements, the Legislature impliedly ratified the ordinance's voting requirement. During NRS 281.501(5) pre-enactment hearings, Clark County argued that certain quorum specifications would make it more difficult to obtain a quorum in supermajority approval votes as with the ordinance at issue here.[14] The Legislature modified the specifications to account for supermajority voting requirements.[15]

There is no authoritative support, however, for the conclusion that the Legislature's modification operated as an approval of the ordinance's supermajority voting requirements for nonconforming zone change applications. Instead, the modification merely shows that the Legislature recognized problems created by the original specifications as applied to supermajority voting requirements in general, which, as we have already pointed out, validly exist in other contexts. As no authority allows Clark County to create supermajority voting requirements for the approval of nonconforming

[14]Hearing on S.B. 16 Before the Senate Comm. on Gov't Affairs, 72d Leg. (Nev., Feb. 5, 2003).

[15]Hearings on S.B. 16, Before the Senate Comm. on Gov't Affairs, 72d Leg. (Nev., Mar. 5, 2003).

zone change applications, the ordinance's supermajority voting requirement is invalid.

## CONCLUSION

The Legislature has expressly enumerated supermajority voting requirements when it has intended to do so. Therefore, when the Legislature has not specified a supermajority voting requirement, its silence reflects an intent to permit the imposition of only a simple majority vote. As no statutes or other examples of legislative intent expressly indicate otherwise, we conclude that NRS 278.260(2) requires only simple majority approval of nonconforming zone change applications. As a result, the ordinance violates its enabling statute and is not valid, and we reverse the district court's order granting declaratory relief on that issue.

ROSE and GIBBONS, JJ., concur.